By the Court. Slosson, J.
The action is brought by the - widow, as administratrix of Timothy St. John Smith, an engineer in the employ of the Hew York and Hew Haven R. R. Co., to recover, under the statute, damages to the widow and two infant children, occasioned by his death, in consequence of the alleged. negligence of the defendants in not providing a proper switch at a point of their road at the Melrose station, in Westchester "county, between Hew York city and Williams’ Bridge, the road between which points was used by the Hew Haven Co. for the running of theip cars with the consent of the defendants, and for a compensation paid by the latter company to the defendants; and the plaintiff alleges, that on the 9th of October, 1854, a locomotive with passenger train, under the management and guidance of the deceased, as engineer as aforesaid, was thrown from the track at Melrose aforesaid, and the said Smith was killed; the cause of the catastrophe being that the defendants “ carelessly, negligently, and _ *227 improperly suffered and permitted a switch of an insufficient, unfit, and improper character and construction to be used at that place, and by their negligence, unskilfulness, want of care, etc., through their servants in that behalf, so carelessly, negligently, and wrongfully placed and turned the said switch, and left the same so carelessly, etc., turned, and made their signal of safety so carelessly,” etc., that the train was thrown from the track, and the engineer killed.
The defendants deny the unfitness of the switch, and allege that tjie engine was thrown from the track “ in consequence of the accidental misplacement of a switch by a switchman employed by the defendants, and the carelessness and negligence of the deceased,” but they aver, “that the said switchman was a suitable and proper person to be employed by the defendants, and had always maintained, until the accident, the reputation of a sober, honest, and capable person for such an employment,” And they further allege, that the deceased entered upon and continued in his said employment “with full knowledge of the construction of the road, and the mode and manner in which the switches and turn-outs upon the road were conducted and managed, and that he took the risk of his employment, and of the character and capacity of the various persons employed thereon,” and they deny negligence on their part.
The evidence as to the good character and qualifications of ¡Lawless, the switch-tender, was uncontradicted.
The switch was out of place; in respect to this there is no dispute. As the trffifi approached, the white flag, signal of safety, was held out by the switch-tender, and one witness says he saw it a quarter of a mile off. The witnesses differ as to the rate of speed at which -the train was moving, varying in their estimates from twelve to eighteen and twenty miles ar£ hour.
The men employed on the road between the city and Williams’ Bridge, are all employed by the defendants, the Harlem Company.
There were six switches at this station, three long and three short. The question as to the sufficiency of the switch in question, which was a short switch, turns on the point, whether it is or not inferior to what is called the “ frog and' guard rail.” On this subject the evidence on the part of the plaintiff is very conclusive.
*228 Schuyler, a railroad engineer, swears that the frog and guard rail require no switchman, and that the shut switch is not now used to his knowledge, in consequence of the superiority of the frog and guard, though he does not mean to say they are not used on any road, as he has seen them in various places.
He says the frog and guard rail is superior to the shut switch, and is uniformly deemed better by engineers, but he says there is no difficulty in the shut switch, if it is in its proper place.
Sanborn, the conductor, who had been five years on railroads, swears that shut switches ai’e not as safe as frog and guard rails; the weight of the engine is calculated to displace a shut switch. He says that if this had been a frog and guard rail they would have gone safe. He says that the shut switch is not used on the Erie road, and the Eastern roads, but the frog and guard.
Mather, a civil engineer, says the best method of construction is to use the frog and guard rail, and it is always used now; and he says the advantage it has is this, it is a fixture, and always right, whereas the shut switch is movable and liable to be out of place. The frog and guard, he says, are altogether safer than the switch, and the latter is not now used on any railroad that he knows of except one in South Carolina. Most railroads, he says, have changed from the shut switch to the frog and guard rail, “ The frog and guard rail are now universally used as far as I know.”
One witness swears that the switches at that station were in a very bad -condition, while the witnesses for the defence swear that they were all in good condition.
On the part of the defence, one witness swears that if he was riding over the road, and was sure it was in its place, he would prefer the shut switch. Another swears this was as good a switch as any of its kind could be.
One witness swears that he should not think the frog and guard rail were used because they are safe; he says that in,the course of time they are cheaper, because the shut switch requires a man to be in constant attendance. It thus appears that the difference between the two is, that the frog and guard rail is always in its place, and requires no switch-man to attend it, while the shut switch absolutely requires the attendance of a switch-man in order to safely.
*229 When the plaintiff rested, the defendants moved for a dismissal of the complaint, on the ground that the accident was occasioned by the negligence of a fellow-servant engaged in the .same business, and was one of the risks assumed by the deceased by virtue of his employment. The motion was denied, and the defendants excepted.
The Judge charged that defendants were liable for the carelessness of the switch-tender employed by them, supposing no negligence on the part of the deceased, notwithstanding he was an employee of the New Haven Company; and to this there was an exception. He also charged that it was negligence on the part of the defendants not to adopt a useful improvement in the construction of the switch, by which improvement the danger of accident would be materially reduced, if the improvement was known to them, and they had it in their power to apply it; and for which negligence they would be liable, provided the accident was caused by such omission on their part, the deceased himself not being guilty of negligence. The proposition was stated with this qualification, however, to wit., that the improvement had been proved,- and found to be valuable as a means of promoting safety, and was known to the defendants, and was within their power so as to be reasonably practicable. To this charge, also, the defendants excepted.
Two questions were then left to the jury.
1. Whether the death was caused by the negligence of the switch-tender, without any negligence on the part of the deceased concurring to cause the result?
2. Whether negligence, on the part of the defendants, in not providing a proper switch also caused the accident, without any negligence on the part of the deceased ?
Both which questions were answered affirmatively by the jury, and a general exception was taken to the charge.
The jury found a verdict for the plaintiff for $5000, the full amount allowed by the statute.
We find no fault with the finding of the jury on the questions submitted to them, as the evidence clearly justifies it in both particulars, a,nd the only questions are, whether they were properly instructed as to the law, and whether the court erred in refusing a'nonsuit ?
*230 The motion for a nonsuit was made on the ground that the switchman and the engineer, (the deceased,) though employed the one by the Harlem and the other by the Few Haven Company, were to be considered, in consequence of the peculiar arrangement between the companies for the use of the same track in common, as engaged in a common service, and that the defendants were, therefore, not responsible, the death being caused by the negligence of a fellow-servant. Had the relation between the two been such, there is no doubt, assuming that the disaster was wholly attributable to the negligence of the switch-tender, without any fault on the part of the deceased, that such would be the rule. (Coon. v. Syrac. and New Haven Railroad Co., 1 Seld. 492.)
But it would be difficult to maintain this position, and the Judge who tried the cause, clearly took a different view of the case, or he would not have instructed the jury that the defendants were responsible for the negligence of the switch-tender, if the deceased himself was not guilty of negligence.
In this, we think, he was right. If the Few Haven Company were running their cars on the defendant’s road, by no higher authority than the mere permission of the latter, still the defendants would be hable to a passenger in, or to a person employed upon, said cars, for any negligence on their part, or on the part of their employees, by which injury should be caused. The act of March 29,1848, authorizes the Few Haven Company to run their cars upon this section of the defendant’s road, upon such terms as may be agreed upon between the two companies. What these are the court is not informed, no evidence thereof having been given, and it is not reasonable to suppose that they are of such a character as to make the servants of the two companies, whilé on this part of the route, agents or employees in a common sense.
But if this question were doubtful, which we do not consider it, or were even clearly the other way, still, the verdict must be sustained under the finding on the second question submitted to the jury, since the rule exempting the principal from liability in such a case has this qualification, that the principal himself is not in fault.
Judge Ruggles in delivering the opinion of the Court of Appeals in Keegan v. The Western Railroad Co., (4 Seld. 175,) which was an action by a fireman, in the employ of the company, *231 for damages occasioned by a defective boiler, thus clearly defines the rules: “ The cases in which it has been held that a principal is not liable to one agent or servant, for an injury sustained by him in consequence of the misfeasance or negligence of another agent or servant of the same principal, while engaged in the same general business, are applicable only where the injury complained of happened without any actual fault or misconduct of the principal, either in the act which caused the injury or in the selection and employment of the agent by whose fault it did happen. Whenever the injury results from the actual negligence or misfeasance of the principal, he is liable as well in the case of one of his servants as in any other.”
The Judge instructed the jury, in substance, that it was neglect in the defendants not to adopt the improvement of the frog and guard rail in the construction of their switches, if the jury should find it was known to the defendants, and they had it in their power to apply it, and that by it the danger of accident would be materially reduced; and in this we think he was clearly right. No rule could be more reasonable, and nothing less should be required of the railroad company; the safety of passengers and employees requires it.
In the case of Hegeman v. The Western R. R. Co., (16 Barb. S. C. R. 353; 3 Kernan, 1,) the court held, that it was negligence in the defendants not to have adopted a safety-beam in connection with the axles of the cars, an invention well known and in extensive use, and by which the danger of accident was greatly diminished. The rule does not, as the Judge in the case at bar instructed the jury, “ require the defendants to adopt or apply every new invention, nor any invention, the utility of which is in doubt; the obligation to use a new invention only arises when such improvement has been proved, and found to be valuable as a means of promoting safety, and that is known to the defendants, and the improvement is within their power, so as to be reasonably practicable.”
The rule, as thus explained and qualified, is free from every objection, and of great practical utility and importance, and one which the courts should rigidly adhere to.
The jury have found that the accident in question was attributable to this cause; as well as to the neglect of the switch-tender, *232 and we think this must settle the question of the defendants’ liability.
It may be proper to add that the position taken by the defendants’ counsel, that the deceased, knowing the condition of the road, took the risk of it, is, we think, unsound. A servant may be held to take the risk of the common and usual hazards of his employment, but certainly not of those hazards which are induced or aggravated by the omission of his employer to use precautions and means, the very existence of which may not bfe in the servant’s knowledge, and which the nature of his service does not require him to know, but which it is the duty of the employer, from his peculiar position, both to know and apply; and much less can he be said to take the risk of the omissions and negligence of those who are not his employers, but who, by the Relation in which they stand to his employers, are bound, in respect to the latter, and all employed by them, to the exercise of the like rule of prudence.
The judgment must be affirmed, with costs.