## ARGUED AND DETERMINED

### IN THE

# SUPREME COURT OF MINNESOTA,

## JULY TERM, 1867.

————•-0-•————

### THOMAS McMAHON,

*v.*

### WILLIAM F. DAVIDSON, *Impleaded, &c.*

*Held:* that when a cause is called for trial in the district court, and a motion thereupon made for a judgment on the pleadings and denied, an appeal does not lie to this court from the order denying such motion.

When the evidence of a witness is presented to the court in the form of a deposition, it must appear that the answers to the cross interrogatories are fully and fairly given, without the suppression of any fact material to the case; but if the interrogatories are general, the answer may be general, and if the answers are as full and minute as the interrogatories fairly and naturally interpreted call for, they are sufficient. It is incumbent on counsel propounding cross interrogatories, to ask such questions as will indicate to the witness the

particularity required; if he fails to do this, and his questions are fairly answered, the answers will not be stricken out for want of particularity.

A written bill of sale is not necessary to pass the title to a boat as between the parties.

It appearing from the evidence that D. and R. were jointly interested in the navigation and earnings of a steamboat, the presumption is, that those employed in managing the boat were the servants of both, and that R., who employed the servants, acted by the authority express or implied of D.

Where one of the owners of a boat, (whether partner or part owner) employs the officers, and gives them directions, the presumption is, that he acts as general agent, or managing owner, but this does not release his partners, or the other boat-owners, from liability for the torts or misfeasances of the boat's crew. It is wholly immaterial, so far as the master's liability is concerned, whether he personally employs his servants, or whether they are employed by some one else acting for him.

In all suits and actions against proprietors of steamboats, for injuries to person or property from the bursting of the boiler of any steamboat, the fact of such bursting, is full *prima facie* evidence, sufficient to charge the defendant and those in his employment, with negligence, until he shows that no negligence has been committed by him, or those in his employment.

It is a general rule, supported by the weight of authority, that a servant, who is injured by the negligence or misconduct of a fellow servant while both are aiding in the common business of the same master, cannot maintain an action for such injury against a master not chargable with any personal negligence or wrong.

But even admitting this to be the case, it is well settled, that if there is any fault in selecting or retaining other servants that are incompetent, or in employing unsafe machiney, the master is answerable for all injury to his servants in consequence; and it seems that the master is liable when the injury is caused in part by his negligence, and without the fault of the party injured. In this case, it was incumbent on the defendant to show affirmatively, that his negligence or misfeasance was not an efficient cause of the injury; and it is not material how many others may have been in fault, if his acts or negligence was an efficient cause of the injury, without any fault on the part of the plaintiff, he is liable. There is no rule of law absolving a party from liability for an injury to another, not himself in fault, merely because a third person may also be culpable, and have done some act that conduced to the injury. A master is liable for injuries done by his servants in recklessly and carelessly performing his business.

It cannot be presumed that a competent and licensed engineer, who had

McMahon v. Davidson, impleaded, &c.

made a solemn oath as provided by law to perform all his duties faithfully, honestly, and according to his best skill and judgment, would, in disregard and violation of his duty and oath, obey the illegal orders of the captain.

The charge of the court that it was negligence to permit the water in the boiler to fall below three inches above the flue, and that carriers of passengers by steamboat are required to employ licensed engineers, was correct.

This, and several other actions, were brought in the district court for Dakota county, to recover damages for personal injuries alleged to have been caused by the explosion of the boiler of the steamboat "John Rumsey." It is alleged in the several complaints substantially, that the said steamboat "John Rumsey" and the steamboat "Albany," were both owned in part by the defendant, and at the time of the explosion or bursting of the boiler of the "John Rumsey," were engaged in racing; that the persons bringing said actions were employed as "deck hands," some on the "John Rumsey," and others on the "Albany." The causes were tried at the March term, 1867, of said district court, and all resulted in verdicts for plaintiffs. Appeals were taken in all of said causes to this court, and by agreement of counsel, the several appeals are submitted together, and are to abide, and be determined by the decision in the above entitled cause.

The case, and the grounds of appeal are sufficiently stated in the opinion of the court.

Allis & Williams, for Appellant.

Smith & Gilman, for Respondents.

*By the Court*—Wilson, Ch. J. On the 3d day of November, A. D. 1864, the plaintiff was employed as a "deck hand" on the steamboat "John Rumsey," which was used in transporting passengers and freight on the Mississippi River,

between LaCrosse and St. Paul; and by the bursting of the boiler of the boat, he suffered personal injuries, to recover damages for which this action was brought. At the term for which the cause was noticed for trial, the defendant moved the court for an order dismissing the action, and for judgment in his favor on the pleadings, which was denied, and defendant having excepted to the ruling, attempted to appeal therefrom, by making the affidavit, filing the bond, and giving the notice required to perfect an appeal, in cases made appealable by our statute. .

The cause having been reached in its order on the calendar, was moved by the plaintiff, the defendant objecting to the trial, on the ground that the case was by the appeal removed to this court, and therefore, that the district court had no jurisdiction to proceed with the trial. The court overruled this objection and the defendant excepted. On the trial, the plaintiff objected to the. reading of the deposition of Albert Jenks, Harvey T. Rumsey, and Charles M. Whitney, on the ground that the cross interrogatory propounded to said witnesses was not properly or fully answered. This objection was overruled and defendant excepted. The deposition having been read, the defendant moved the court to strike out "that portion of the deposition of Rumsey that related to the ownership of the steamboat," on the ground that it was incompetent, not being the best evidence. This motion was also overruled, and the defendant excepted to the ruling. After the evidence was closed, the counsel for the defendant asked the court to charge the jury as follows :

1st. "That should the jury find from the evidence, that the injuries complained of were occasioned by the negligence of the persons having charge of the steamer John Rumsey, they must find that such persons were the agents or servants of defendant Davidson at the time, in order to charge him with

damage occasioned by the act, or they must find a verdict for defendant." (Which request was given by the Court to the jury.)

2d. "That in order to charge the defendant, Wm. F. Davidson, for the negligence of the persons having charge and running said steamboat John Rumsey, it must be proved to the jury that said defendant Davidson had such an interest in said boat John Rumsey, or the earnings thereof, and in the running of said boat, as would give him control of the employees or servants of the same, and such a control as would authorize him to discharge them for misconduct, or the jury must find a verdict for defendant."

(Which request was refused by the court, and duly excepted to by the defendant's counsel.)

3d. "If the jury find from the evidence that the plaintiff, at the time of the injury complained of was received, was a servant or deck hand employed by the defendant Davidson, and assisted in the running of the steamboat Albany, and that the conduct or management of the agents and servants of the defendant employed in the running of the steamboat Albany, contributed to the injury, the plaintiff cannot recover, even if those who had the management or control of the running of said steamboat Albany, were superior agents or employees, if the plaintiff was engaged in the same general business with said superior agents and servants, although the plaintiff was subject to the control of such superior agents or employees, and could not have guarded against his or their negligence, or its consequences, unless it appears from the testimony that the defendant did not use ordinary care to select such agents or employees as were prudent and capable."

(Which request was given by the court to the jury.)

4th. "That if the jury find that said steamboat Albany was racing with the steamboat John Rumsey at the time of the

alleged explosion, and that such racing contributed to and was a part of the cause of the explosion which resulted in the injury of the plaintiff, and that the plaintiff was the servant of this defendant, employed on said Albany, assisting in running the same, and was engaged in the same general business with those who had the immediate management and control of said Albany, and this contributed to said explosion, the plaintiff cannot recover, although he was subject to the control of superior agents, who were running said boat Albany, and could not guard against their negligence and misconduct, or its consequences."

(Which request was refused by the court, and duly excepted to by the defendant's counsel.)

5th. "That if the jury should find from the evidence, that the explosion took place by the negligence of the persons having the charge of the steamer John Rumsey, and that such persons were the servants or agents of this defendant, and that at the time of the explosion the said steamer John Rumsey was racing with the steamer Albany, and that the persons having the charge of said steamer Albany, were servants or agents of this defendant, and that the plaintiff was also a servant of this defendant on said steamer Albany, at the time, and was engaged in the same general business, the plaintiff cannot recover, and the jury must find a verdict for the defendant."

(Which request was refused by the court and duly excepted to by the defendant's counsel.)

6th. "If the jury find that the plaintiff was at the time of the injury received, a servant or deck hand on said boat, employed by the defendant, and engaged in the business of assisting to run said boat, and that the injury received was occasioned by the negligence of a superior agent or employee of said boat, who was engaged in the same general business,

they must find for the defendant, and that this action cannot be maintained against the defendant, although the plaintiff was subject to the control of such superior agent or employee, and cannot guard against his negligence or its consequences."

(Which request was refused by the court and duly excepted to by the defendant's counsel.)

And the counsel for the plaintiff asked the court to charge as follows:

2d. "That if the evidence shows that the boiler of said steamboat John Rumsey exploded and injured the plaintiff as is alleged in his complaint, and if defendant Davidson was interested in the earnings and navigation of said boat at the time of said explosion, that the fact of such explosion is *prima facie* evidence of negligence, and that the burden is on the defendant to show the contrary."

(Which request was given by the court to the jury, and duly excepted to by defendant's counsel.)

3d. "If weights were placed upon the safety valve, other than those placed upon it by the inspector, by which the said boiler was exposed to a greater pressure than that authorized by the inspector's certificate, such act of loading the safety valve is illegal, and renders the defendant liable in case an explosion followed and resulted therefrom."

(Which request was refused by the court.)

4th. "That if defendants, by their servants or agents in charge of said boat, immediately before the explosion of said boiler, knowingly permitted or suffered the water in said boiler to fall and be lower than three inches above the flue of the boiler, unless the same happened through inevitable accident, such act is negligence."

(Which request was given by the Court to the jury and duly excepted to by defendants' counsel.)

5th. "If the jury find that the boiler of the John Rumsey

exploded whilst being navigated by the servants or agents of defendants in their business, by which plaintiff was injured, that the fact of such bursting of such boiler is *prima facie* evidence sufficient to charge the defendants with negligence, until it be shown that no negligence was committed by defendants, or those in their employment.

6th. "That carriers of passengers by steamboat are required by law to employ duly licensed engineers to take charge of the engines and machinery forming the motive power of such boat, and if an unlicensed person is so employed, and an explosion is occasioned by his unskillful management of such machinery, the owners for whose benefit such boat is navigated, at the time of the explosion, are responsible for damages resulting therefrom, to any person not himself in fault."

(Which two last requests were given by the Court to the jury, and duly excepted to by defendant's counsel.)

7th. "That it is the duty of carriers of passengers to provide suitable and safe machinery, and reasonably well constructed boats, and duly licensed engineers, and in case of the explosion of the steam boiler of any such boat, it is incumbent upon the carrier to show he had so provided, and is only authorized to employ an unlicensed engineer, in case of the disability of a licensed engineer during the voyage, or in case there is a necessity for so doing on the voyage, and he must in case of an explosion, furnish proof that the engineer in charge at the time is competent, and had authority to so act, or was employed in case of necessity to act as such."

(Which request was given by the Court to the jury and duly excepted to by defendant's counsel.)

8th. "That the position, that the principal is not liable to an agent or servant for an injury sustained by him in consequence of the misfeasance or negligence of another agent or servant of the same principal, applies only when the injury

complained of happened without any actual fault or misconduct of the principal, either in the act that caused the injury, or in the selection and employment of an unskilled or incompetent agent, by whose default or act the injury was occasioned."

(Which request was given by the Court to the jury and duly excepted to by the defendant's counsel.)

9th. "If the jury find that defendant was the owner, or interested in the navigation and earnings of said steamboat John Rumsey, at the time of the explosion, the persons then employed in the management and control of said boat were the servants or agents of the defendant, whether employed by him personally, or by any other person for him."

(Which request was given by the Court to the jury and duly excepted to by defendant's counsel.)

The Court charged: "The general principle of law is, that one employee cannot recover against his employer for injuries sustained on account of the acts of his fellow employees, unless it shall appear in evidence, that the injury was occasioned by the result of the employment, by the employer, of an incompetent person, and that on that account the accident occurred which occasioned the injury. Then if you believe from the evidence in this case, that the defendant Davidson was interested in the boat, and earnings of the steamboat John Rumsey, at the time of the injury complained of, and that the injury was occasioned by the explosion of the boiler of said boat, that fact is *prima facie* evidence of negligence, and devolves the burden of proof upon the defendant to show, that the person or employee, who caused the explosion, was competent, and that the accident did not occur through any fault or negligence of the employer."

(To which instruction to the jury by the Court the defendant Davidson, by his counsel, duly excepted, which exception was allowed by the Court.)

The jury having returned a verdict for the plaintiff for $2,-250, the defendant made a motion for a new trial, which was denied, and judgment rendered on the verdict, and from the judgment an appeal is taken to this Court, on an agreed "case," which sets forth all the evidence offered on the trial.

Whether the defendant had the right to "appeal" from the order denying the motion for judgment in his favor, on the pleadings, depends on the provision of our statute, as this mode of review can be resorted to only when allowed by the statute. *Tierney vs. Dodge*, 9 *Minn.*, 166. It is claimed that the appeal is authorized by the third subdivision of *Sec.* 8, *chap.* 86 *of the Gen. Stat.*, which provides that an appeal may be taken "From an order involving the merits of the action or some parts thereof." To this view we cannot assent. An order from which an appeal lies under this clause of the statute, must be decisive of the question involved, or of some strictly legal right of the party appealing; an order which leaves the point involved still pending before the court, and undetermined, cannot be said to involve the merits, or affect a substantial right. The motion in this case was made on the ground, that the complaint did not state facts sufficient to constitute a cause of action, and the refusal to allow the motion did not determine the sufficiency of the pleading, or prejudice the defendant's right to raise the question at a subsequent stage of the proceedings; under the circumstances, the motion having been made without notice to the plaintiff's counsel, and when the parties were in attendance ready to proceed with the trial of the cause, the Court might properly have refused to entertain it, leaving the defendant to raise the question when the plaintiff's counsel would be prepared to argue it, and the Court would have time for deliberation, before its decision. But the order in which such question shall be presented is ordinarily a matter of discretion with

the Court below, and therefore not subject to review here. *See Hulet vs. Matteson, ante*, 349.

We think the objection to the deposition of Jenks, Rumsey and Whitney is untenable. It is held, for reasons that are manifest, that when the evidence of a witness is presented to the court in the form of a deposition, it must appear that the answers to the cross interrogatories are fully and fairly given, without the suppression of any fact material to the case. But to determine in any case whether an answer is full and responsive, reference must be had to the interrogatory; if that is general the answer may be general—if the answer is as full and minute as the interrogatory naturally and fairly interpreted calls for, it is sufficient. Jenks, in answer to the direct interrogatories propounded to him, after stating his name, age, place of residence and acquaintance with defendant for six years, stated that he was on board the boat at and before the time of the explosion; that it was "racing" with the steamer "Albany," and also stated who were the officers of the boat at that time, and what they said and did, and that he had a conversation with defendant, in which he (defendant) said that it was Rumsey's boat, and Rumsey's crew, that he was only interested in a share of the earnings.

Rumsey, in answer to the direct interrogatories, testified, that he had known the defendant for nine years; that in 1864 defendant was engaged in the business of running steamboats, and in the freight and passenger business on the Mississippi river; that the steamer Rumsey was owned equally by defendant and himself at the time of and prior to the explosion, and that each was equally interested in the earnings of the boat; that during the year 1864, and up to the time of the explosion, both had the management of it; that defendant was on their accounting in March, 1865, settled with and paid for the earnings of the boat up to the time of the accident.

Whitney testified that he had known Rumsey since 1857, and Davidson since 1859 ; that he kept the books of Rumsey in 1864, in which were kept an account of the earnings of the steamboat Rumsey, accounted for at La Crosse ; that he, acting in behalf of Rumsey, made a settlement in March, 1865, with William Rhodes, who acted in behalf of defendant, for the earnings of the steamer Rumsey for the season of 1864. That he knew defendant was interested in the earnings of the steamboat Rumsey, because he was allowed, in March, 1865, $350 for his interest in the wreck, and that he knew defendant was interested in the earnings, because in the latter part of August, or first of September, 1864, he (defendant) requested witness to go into the packet company's office, where it was stated in presence of defendant, Rumsey, Rhodes and witness, the interest that defendant and Rumsey each had in the earnings of said boat. He also stated that Davidson and Rumsey managed the steamer Rumsey together during the season of 1864.

To each of these witnesses a single cross-interrogatory was propounded in the following language :  "How do you know the several matters to which you have testified in your answer to the direct interrogatories propounded to you ?"

Jenks answered :  "I saw and heard what I have stated."

It was for the jury to determine whether the answer to the cross-interrogatory was true ; it is only for us to determine whether it was a full answer, and on this point there is no room for doubt as to the answer of Jenks.

Rumsey answered to the cross-interrogatory :  "I know from my transactions with W. F. Davidson." This, too, we think, was a full and fair answer to the question.

If defendant's counsel wished to ascertain whether the transactions between Rumsey and Davidson were evidenced by writings, or if he wished to know the particular grounds of

his belief, or knowledge, he should have asked such questions as would have indicated to the witness the particularity required.

Whitney answered the cross-interrogatory: "I know what I have testified to from my knowledge of the business of Davidson and Rumsey;" and in answer to the direct interrogatory he had testified as to his knowledge of Davidson's and Rumsey's business, and the mode of acquiring such knowledge. There seems to have been no attempt on the part of any of the witnesses to suppress the truth, and the answers seem to us to be as full and minute as the interrogatory called for. The depositions were, therefore, we think, properly received in evidence. The motion to strike out the portion of the deposition of Rumsey, relating to the ownership of the steamboat, on the ground that it was not the best evidence was properly denied. Rumsey was asked who owned the boat in 1864, and he answered that defendant and he owned it in equal shares. It seems from the other evidence in the case, that in 1863 Rumsey was the sole owner of the boat; whether Davidson purchased his interest from Rumsey or from some other person, does not appear, nor is it material; nor does it appear whether the purchase was evidenced by a written bill of sale. In the absence of evidence that there was any writing, we cannot say that there was any better kind of evidence of Davidson's ownership, than Rumsey's oral testimony. His answer was a competent and proper answer to the question propounded to him as to the ownership, and the defendant's counsel with a full knowledge that the witness was called on to testify on that subject, did not see fit to interrogate him as to the chain of title, mode of transfer, or any particulars of the purchase.

Perhaps the defendant's objection goes to the length that title to a boat cannot be made, or evidenced, except by a bill

of sale, or some written instrument; but this is not the law. 2 *Par. on Con.* (5 *Ed.*) 265, *and cases cited in note ; Lamb vs. Durat,* 12 *Mass.* 54; *Bixley vs. Whitney,* 8 *Pick.* 86; *Vend vs. Burrill,* 16 *Ib.* 401 ; *Wendover vs. Hay,* 7 *Ill.* 308.

The questions involved in the exceptions to the charge, we will discuss without taking up each exception separately.

It is not questioned but that the plaintiff suffered the injuries complained of, at the time, and in the manner charged. It was testified by Rumsey and Whitney that Davidson was interested in the earnings and navigation of the boat, during the season of 1864, up to the time of the accident. There was no attempt to contradict this fact, save by the evidence of L. S. Kidder, who testified that he was sole clerk of the boat on and prior to the 4th of November, 1864. "I supposed (he says) H. T. Rumsey to be the owner of the boat at the time. H. T. Rumsey employed the chief officers, and directed the navigation of the boat at that time. The officers of the boat, not employed by Rumsey himself, were employed by the Captain and first engineer. At the time of the explosion, the boat was under the exclusive control and management of H. T. Rumsey." On cross-examination he said : "I know he employed me, and I suppose he employed the others, as they told me so. Mr. Rumsey also told me, at different times while I was on the boat, that he had employed the Captain and engineer. I know that the boat was under the exclusive control of Rumsey at the time of the explosion, because no one else gave us any orders; when we wanted anything we went to him. Rumsey was not on the boat at the time of the explosion."

This evidence does not contradict the statements of Rumsey and Whitney, that defendant was interested in the earnings and navigation of the boat. That Rumsey employed the captain, clerk and engineer, and that no one else gave them

any orders may be admitted. It is neither customary, nor necessary, where two or more are interested as partners, or part owners in a boat, for all to act in employing officers, or providing for or managing the boat. Rumsey may have acted and the presumption is he did act as general agent, or managing owner, but this would not relieve his partner, or the other part owners from liability for the torts or misfeasance of the boat's crew. It is wholly immaterial, so far as the master's liability is concerned, whether he personally employed his servants, or whether they were employed by some one else acting for him. It appearing from the evidence, that the defendant was interested with Rumsey in running the boat, and that they together received the earnings, we must presume, there being no evidence to the contrary, that those employed in managing the boat, were the servants of both, and that Rumsey, in employing them, acted by the authority express or implied of Davidson.

The instructions asked, which assumed the existence of evidence tending to show that the hands on the boat were not the servants of defendant, or subject to his control, were, therefore, properly refused. *Dunlap's Paley on Agency*, 4th Am. Ed., 297; *Weyland vs. Elkins*, 1 Holt, 227, (3d E. C. L.); 1 Starkie, 272, (26 C. L.); *Cobb vs. Abbott*, 14 Pick., 292. In *sec.* 13, 5 U. S. Statutes at Large, page 306, it is provided "that in all suits and actions against proprietors of steamboats, for injuries arising to person or property from the bursting of the boiler of any steamboat, * * * the fact of such bursting shall be taken as full *prima facie* evidence, sufficient to charge the defendant, or those in his employment, with negligence, until he shall show that no negligence has been committed by him, or those in his employment."

Under this statute it is incumbent on the defendant to disprove negligence, which accords with the rule of the common

law, that when the subject matter of a negative averment lies peculiarly within the knowledge of the other party, the averment is taken as true, unless disproved by that party. 1 *Greenleaf Ev.*, Sec. 79; *State vs. Shaw*, 35 *N. H.*, 219. It is a general rule, supported by the weight of authority, that a servant who is injured by the negligence or misconduct of a fellow servant while both are aiding in the common business of the same master, cannot maintain an action for such injury, against a master not chargable with any personal negligence or wrong. In this case we are not called on to decide, whether on principle the law should be so interpreted in our State, for the court below charged that the master would not be liable in such case, and the plaintiff did not except to the charge.

But if there is any fault in the selection, or retaining of other servants, or in employing unsafe machinery, the master will be answerable for all injury to his servants in consequence. *Kenyon vs. Western R. R. Co.*, 4 *Seld.* 180; *Cagger vs. Taylor*, 10 *Gray*, 280; *Smith vs. N. Y. & H. R. R. Co.*, 6 *Duer*, 230. And it would seem that the master is liable when the injury is caused in part by his negligence and without the fault of the party injured. *Smith vs. N. Y. &c.*, 6 *Duer*, 225.

In this case it was incumbent on the defendant to show affirmatively, that his negligence or misfeasance was not an efficient cause of the injury; and it is not material how many others may have been in fault, if his acts or negligence was such efficient cause, without any fault on part of the plaintiff, he is liable.

The common law holds, that a plaintiff cannot recover damages for an injury attributable in any degree to his own negligence, and want of care, unless the defendant has been guilty of some intentional wrong; but we are not aware of

any rule of law, or reason, that absolves a party from liability for an injury to another who [is not himself in fault, merely because a third person may also be culpable, and have done some act that conduced to the injury. In this case it has not been proven, nor do the facts supposed in the charge asked by the defendant's counsel assume, that the plaintiff was guilty of any negligence whatever. But it is urged by the defendant, that the explosion was not the result of the carelessness of his servants, but of their *wilful misconduct*, and therefore, he is not liable.

It is held, that a master is not liable for a wrong wilfully committed by his servants, and not sanctioned or authorized by him. *McManus vs. Cricket*, 1 *East.* 106; *Wright vs. Wilcox*, 19 *Wend.* 344.

"But this rule (says Lord Kenyon in *McManus vs. Cricket*) does not militate with the cases in which the master is holden liable for the mischief arising from the negligence and unskillfulness of his servant, who had no purpose but the execution of his master's orders."

It is neither proven, nor presumable in this case, that the defendant's servants intended to do the injury complained of, or to cause the explosion which was the proximate cause of the injury.

This tort was not a wilful act of mischief of the servants, but the consequence of their reckless and careless performance of their master's business, and therefore does not come within the rule exempting a master from liability for such tort. *See cases above cited.* The particular act of negligence charged in the complaint is, that Dunnegan who acted as engineer, and had charge of the machinery at the time of the explosion, was not a licensed engineer, and was unskilled, and unqualified to discharge the duties of engineer, and that therefore his employment, and retention in that capacity, was

illegal, and rendered the defendant responsible for injuries resulting from his want of skill, or carelessness in the performance of his duties. Though the burden was on the defendant to show proper care and diligence on his part in this respect, yet he offered no evidence that could tend to establish either; but it is urged in his defence, that it appears Dunnegan acted in obedience to the positive orders of the Captain, and therefore the latter, and not the former, caused the injury complained of. It is a conclusive answer to this position, that it cannot be presumed that a competent and licensed engineer, who had made a solemn oath, as provided by law, to perform all his duties faithfully, honestly and according to his best skill and judgment, would, in disregard and violation of his duty and oath have obeyed the illegal orders of the Captain.

The charge of the Court that it was negligence to permit the water in the boiler to fall below three inches above the flue; also that carriers of passengers by steamboat are required to employ licensed engineers, was correct. 10 *U. S. Stat. at Large, page* 69, *Sec.* 12; *Ib. page* 67, *Sec.* 8, *sub.* 10.

The views above stated, we believe, cover all the questions raised in this case.

Judgment below affirmed.