MARGARET SULLIVAN, AS ADMINISTRATRIX, ETC., OF MICHAEL SULLIVAN, DECEASED, RESPONDENT, v. THE TIOGA RAILROAD COMPANY, APPELLANT.

*Action by an administrator to recover damages for the negligent killing of his intestate — the fact that no bond was filed on the issuing of the letters cannot be set up as a defense to the action — when an employee of a company owning and controlling a station-yard is not a co-employee of an engineer in charge of a locomotive of another company entitled to use the yard.*

For a year before December 5, 1883, Michael Sullivan, the plaintiff's intestate, was employed by the Erie railroad to shovel ashes from a pit thirty feet long, four feet wide and two and a-half feet deep, situated seventy feet south of a turn-table in the yard of that company at Elmira. Before beginning to shovel from the pit the ashes, which were dumped therein from the locomotives, water from a hydrant was turned upon the ashes to cool them and enable the shoveler to handle them readily, which, on the day above stated, developed so much steam that it was difficult, if not impossible, for Sullivan, who was shoveling

ashes from the pit, to see an approaching locomotive for any considerable distance, or for the employees on the locomotive to see Sullivan until very near the pit. While Sullivan was leaving the pit on that day he was run over by one of the defendant's locomotives, sustaining injuries which caused his death twelve days thereafter. Upon the trial of this action, brought by the plaintiff, as the administratrix of Sullivan, to recover the damages occasioned by his death, the defendant claimed that the plaintiff was not the legal administratrix of Sullivan, because of the omission of the surrogate to require, and of the omission of the plaintiff to file, a bond pursuant to the provisions of section 2667 of the Code of Civil Procedure.

*Held*, that as the surrogate had jurisdiction to grant the letters upon the decedent's estate, his omission to require, and the plaintiff's omission to give, a bond did not render the letters void *ab initio*.

*Bloom* v. *Burdick* (1 Hill, 130); *Lawrence* v. *Parsons* (27 How., 26) followed.

That the plaintiff was authorized to maintain the action, and that the letters could not be questioned in such action, because of the omission to give a bond until the surrogate's action was reversed on appeal or the letters were revoked by a proceeding brought for that purpose.

Code of Civil Procedure (§ 2591), *Carroll* v. *Carroll* (60 N. Y., 121); *Sullivan* v. *Fosdick* (10 Hun, 173) followed.

The acting superintendent of the Erie railroad testified that, by the rules, employees on locomotives were required to ring their bells while moving in the yard, and several other witnesses testified that it was the custom to ring the bells upon locomotives when approaching the ash-pit. The employees on the locomotive, who were accustomed to daily run this locomotive over the ash-pit to the turn-table, and who, when they saw steam, knew that some person was at work in or about the pit, testified that they saw steam arising from the pit on the day in question. The evidence as to whether or not the bell on the locomotive was rung as it approached the pit was in direct conflict.

*Held*, that it was not error to permit the plaintiff to show that it was the custom of the station-yard for the bells of locomotives to be continuously rung while approaching the ash-pit, and that, on the occasion in question, the locomotive ran towards the pit at a greater than the usual rate of speed.

That it was for the jury to say whether the defendant's employees were guilty of negligence, and whether the intestate was free from contributory negligence.

The defendant's line terminated at Elmira. The Erie road owned and controlled the yard, and when the defendant's locomotives were in it the servants employed on them were under the exclusive control of the officers of the Erie railroad, who directed how locomotives should be run, at what speed, what precautions should be used and what signals given.

*Held*, that the plaintiff's intestate and the defendant's employees on the locomotive were not co-servants.

The authorities bearing upon this question, collated and considered by FOLLETT, J.


APPEAL from a judgment in favor of the plaintiff, entered at the Chemung Circuit upon the verdict of a jury, and from an order

denying a motion made for a new trial at Special Term upon a case and exceptions.

*Sylvester Taylor,* for the respondent.

*David C. Robinson,* for the appellant.

FOLLETT, J :

Appeal from a judgment entered upon a verdict, and form an order denying a motion for a new trial, made at Special Term, on a case.

In the yard of the Erie railroad, at Elmira, seventy feet south of the turn-table, there is an ash pit thirty feet long, four feet wide and two and one-half feet deep, sunk in the ground between the rails of a track leading from the main track to this turn-table, into which pit ashes are dumped from locomotives. For a year before December 5, 1883, Michael Sullivan was employed by the Erie railroad to shovel ashes from this pit to a car standing beside the pit, for removal. Before beginning to shovel, water from a hydrant was turned on to the ashes to cool them and enable the shoveler to handle them readily, which, on the occasion in question, developed so much steam that it was difficult, if not impossible, for Sullivan to see the approaching locomotive for any considerable distance, or for the employees on the locomotive to see Sullivan until very near the pit. December 5, 1883, in the forenoon, Sullivan, while leaving the pit, was run over by one of defendant's locomotives and injured, and twelve days thereafter he died. This action is for the recovery of damages, under sections 1902 to 1905 of the Code of Civil Procedure.

It is alleged in the complaint that the engineer in charge of the locomotive was negligent (1) in running the locomotive too fast as it approached the ash pit; (2) in not warning Sullivan of the approach of the locomotive, by ringing the bell or by sounding the whistle. The defenses interposed are : (1.) That plaintiff is not the legal administratrix of decedent's estate, because of the surrogate's omission to require and of the omission of the plaintiff to give a bond, pursuant to section 2667 of the Code of Civil Procedure. (2.) That defendant's employees in charge of its locomotive were not negligent. (3.) That decedent negligently failed to discover

the approach of the locomotive, and thereby contributed to his injury. (4.) That decedent's death resulted from his refusal to permit an immediate amputation of his leg. (5.) That defendant's employees in control of its locomotive, and decedent, were co-employees.

The surrogate having jurisdiction to grant letters upon decedent's estate, his omission to require, and the plaintiff's omission to give a bond, does not render the letters void *ab initio* (*Bloom* v. *Burdick*, 1 Hill, 130; *Lawrence* v. *Parsons*, 27 How., 26), and by them the plaintiff is authorized to maintain this action, in which the letters cannot, for the lack of a bond, be questioned until reversed on appeal or revoked by a proceeding brought for that purpose. (Code Civil Pro., § 2591; *Carroll* v. *Carroll*, 60 N. Y., 121; *Sullivan* v. *Fosdick*, 10 Hun, 173; *Lawrence* v. *Parsons, supra*; 1 Will. Ex. [6th Am. ed.] book 6, chap. 1, p. 550.)

Were the employees in charge of the locomotive negligent? Some of the witnesses testified that the locomotive approached the ash-pit at the rate of six to ten miles per hour, and others at the rate of four to six miles per hour. A civil engineer, called by defendant, testified that a person in the ash-pit could see a locomotive approaching from the south for three hundred and twenty-five feet, and it would seem to follow that persons on the locomotive could see the ash-pit for the same distance. The employees in charge of the locomotive testified that they saw steam arising from the pit. It appears that it was the daily custom of these employees to run this locomotive over the ash-pit to the turn-table, reverse and return to the main track. When they saw the steam they knew that some person was at work in or about the pit.

The acting superintendent of the Erie railroad testified that, by the rules, employees on locomotives were required to ring their bells while moving in the yard. Several witnesses testified that it was the custom to ring the bells upon locomotives when approaching this ash-pit. Several persons employed in the yard, and who were near to the scene of the accident, testified that they heard no bell or warning, and one that he was looking at the locomotive and that the bell did not ring. The employees on the locomotive testified that the bell was rung. Under the evidence and circumstances it was for the jury and not for the court to determine

whether the employees in charge of the locomotive negligently injured the decedent. And so, without calling special attention to the circumstances disclosed by the evidence, it was a question of fact whether the decedent negligently failed to discover the approaching locomotive in time to escape.

At the close of the evidence the court ruled that it was for the jury to determine whether decedent was negligent in refusing to permit an immediate amputation of his leg, and whether his death was caused by the injury or by his refusal to permit an immediate amputation. Subsequently the jury were instructed in accordance with this ruling. These questions being questions of fact, and having been fairly submitted to the jury, this court cannot, under its well-settled rules, set aside the verdict as against the weight of evidence in the face of the decision of the experienced trial judge, who refused to do so upon a case.

Were defendant's employees in charge of its locomotive and the decedent, employed by the Erie railroad, co-employees? The defendant, at the close of the evidence, insisted that they were, and moved for a nonsuit upon this and other grounds, which was refused. The defendant requested the court to charge that if the jury found that decedent and the employees in charge of the locomotive were at the time of the accident under the control of the superintendent of the Erie railroad they were co-employees, and the plaintiff could not recover. This the court refused, and left it to be determined by the jury, as a question of fact, whether they were co-employees, saying, if they were, the plaintiff could not recover.

Presumptively, the servants of two independent masters are not co-servants. The exact relations existing between the defendant and the Erie railroad are not disclosed by the evidence. It does appear, by undisputed evidence, that the defendant's line terminated at Elmira; also that the Erie railroad owned and controlled the yard, and that when defendant's locomotives were in it the servants employed on them were under the exclusive control of the officers of the Erie railroad, who directed how locomotives should be run, at what speed, what precautions should be used and signals given.

The cases cited may be conveniently divided into two classes: First, those in which the servants of a railroad corporation owning

the structures and solely controlling the manner of moving the trains of both corporations are negligently injured by the servant of a railroad corporation having the right to use the structures under a contract. In *Warburton* v. *The Great Western Railway Company* (L. R. 2 Exch., 30; S. C. 4 H. and C., 695), the plaintiff was employed by the L. N. W. Railway Company, as a porter at its station. The defendant used this station under a contract with the L. N. W. Railway Company, by which the latter company controlled the movement of defendant's trains while at the station. The plaintiff was injured by the negligence of one of defendant's engineers. It was held that the engineer and the porter were not co-employees, and that defendant was liable. In *Catawissa Railroad Company* v. *Armstrong* (49 Penn. St., 186), the defendant, (plaintiff in error), ran its trains for some miles over the track of the P. and E. Railroad Company, subject to the rules and regulations of the latter corporation. Plaintiff's intestate was a brakeman, employed by the P. and E. Railroad Company, and was negligently killed by defendant's conductor. It was held that the brakeman of the P. and E. Railroad Company and the defendant's conductor were not co-employees, and a recovery was sustained. In 1868, the rule in Pennsylvania was changed by the Legislature. (*Mulherrin* v. *The D., L. and W. R. R. Co.*, 81 Penn. St., 366.) In *Swainson* v. *The North Eastern Railway Company* (L. R. 3 Exch. Div., 341), the defendant's station and that of the Great Northern Railway Company abutted upon each other; each corporation owning two tracks running by the station. Trains entering into or departing from these stations, were governed by signals and points, worked by signalmen, who were members of the "Joint Station Staff." The members of this staff (including the plaintiff's intestate), were employed and paid by the Great Western Railway Company and wore its uniform, but defendant paid to the Great Western Railway Company one-half of the wages of the Joint Station Staff. Plaintiff's intestate, a signalman, and one of the joint staff, was killed by the negligence of an engineer of one of defendant's trains. It was held that the signalman and the engineer were not co-employees, and the action could not be defeated on that ground.

The second class embraces cases in which the servants of a railroad corporation which uses, under a contract, the structures of another

railroad corporation, are negligently injured by the servants of the corporation owning the structures and solely controlling the manner of moving the trains of both corporations. In *Smith* v. *New York and Harlem Railroad Company* (6 Duer, 225; affirmed, 19 N. Y., 127), the plaintiff's intestate was an engineer in the service of the New York and New Haven Railroad Company, which ran its trains over some miles of defendant's track. By the negligence of defendant's switchman, plaintiff's intestate was killed. The defendant, by the contract between the corporations, was bound to care for the track, and the switchman was under its exclusive control. It does not appear whether the trains of the New York and New Haven company were, while on defendant's track, subject to its control, but such is so generally the custom that it may be safely assumed that they were. It was held that the engineer of the New York and New Haven Railroad Company and the defendant's switchman were not co-employees, and a recovery was sustained. In *Zeigler* v. *The Danbury and Norwalk Railroad Company* (52 Conn., 543), defendant's road and that of the S. Corporation connected and formed a continuous line. A train owned and operated by S. ran daily over defendant's track, subject to the control of defendant's officers. The plaintiff was a brakeman on this train, who was injured by the negligence of defendant's conductor, while on defendant's track. It was held that defendant's conductor and plaintiff were not co-employees, and a recovery was sustained. *Sawyer* v. *Rutland and Burlington Railroad Company* (27 Vt., 370), is not distinguishable from *Smith* v. *New York and Harlem Railroad Company*, either in facts or principles. *Roach* v. *The Fort Orange Paper Company* (18 N. Y. W. Dig., 124; affirmed, 95 N. Y., 660), is not within either class of cases, because neither master exercised control over both servants at the time of the injury. In that case the injured servant was employed and solely controlled by the railroad corporation, and the negligent servant was employed and solely controlled by the defendant. So in *Svenson* v. *Atlantic Mail Steamship Company* (1 J. and S., 277; affirmed, 57 N. Y., 108), the servants were employed by, and were serving different masters, and it does not appear that either master exercised, or had the right to exercise at any time, any control over both servants.

In *Vose* v. *L. and Y. Railway Company* (2 H. and N., 728)

the recovery was had because the defendant negligently established defective rules, which was not the negligence of a servant, but of the principal. The following cases : *The P., W. and B. Railroad Company* v. *State* (58 Md., 352); *Snow* v. *The Housatonic Railroad Company* (8 Allen 441); *Graham* v. *The N. E. Railway Company* (18 C. B. N. S., 229) arose out of the neglect of the defendants to provide safe structures — master's duties — whereby the servants of the corporations using the structures were injured. In *Cruty* v. *Erie Railway Company* (3 T. & C., 244), one of the judges expressed views not in accordance with the authorities above cited, which were not concurred in by the court, and a new trial was granted because the evidence did not show that defendant was negligent. Under the authorities, the plaintiff's intestate and defendant's employees in charge of the locomotive, were not co-servants, and this action cannot be defeated on that ground. The text writers support this conclusion. (Shearm. & Red. Neg., § 101; 2 Thomp. Neg., § 1043; Whart. Neg., § 231; Pierce, R. R., 370; 3 Wood's Ry. Law, 1496; Wood's M. and S. [2 ed.], 435; 2 Rorer R. R., 1205.)

It was not error to permit the plaintiff to show that it was the custom of the station yard for the bells of locomotives to be continuously rung while approaching the ash pit. It was shown that the corporation owning the yard, by a rule established, required that the bells of locomotives moving in the yard should be rung. Presumptively, the plaintiff's intestate knew of the rule and its customary observance, and he had a right to rely upon the continuance of the observance of the rule. This evidence bore directly upon the question of whether decedent negligently contributed to his own injury. It was competent, upon this issue, to permit the plaintiff to show that the locomotive, on this occasion, ran towards the ash pit at a greater than the usual rate of speed.

The judgment and the order are affirmed, with costs.

HARDIN, P. J., and BOARDMAN, J., concurred.

Judgment affirmed, with costs.