# Miles Carroll

## *v.*

## The Minnesota Valley Railroad Company.

If two corporations, engaged in carrying passengers and freight over separate portions of an entire route of travel, for the purpose of carrying through passengers, freights and mails, run their conveyances so as to connect at a common terminus of both lines, and sell tickets over the entire road, but the fares and freights over each portion of the route are distinct, there is no such legal identity between them as will prevent the maintenance of an action by the employee of one of them against the other for personal injuries occasioned through the negligence of its servants.

In an action for damages for a personal injury, if the plaintiff's negligence contributed to the injury complained of, he cannot recover, unless there was some intentional wrong on the part of the defendant.

Circumstances which show such negligence on the part of the plaintiff, although engaged in the discharge of his duty, as will prevent his recovering in an action for personal injuries, considered and determined.

The plaintiff was an employee of the N. W. U. Packet Co. on the steamboat Mollie Mohler, which boat was engaged in carrying passengers and freight on the Minnesota river from

Miles Carroll v. The Minnesota Valley Rail Road Company.

Belle Plaine, where it connected with defendant's railroad, to Mankato and intermediate points. About the 15th of June, 1867, the water in the river being high, the steamboat was moored alongside a branch track of the defendant's road at Belle Plaine, to receive and discharge passengers and freight; for that purpose its staging or landing plank was run out over the railroad track. A car was standing on the track on one side the staging, and while the defendant was on the other side, engaged in removing the staging from the track, with his back to a train of cars, the train backed down, and he was caught between two cars. He brought this suit in the Court of Common Pleas for Ramsey county to recover damages for the injuries sustained. The cause was tried before a jury, who found a verdict for plaintiff for $5000. The defendant made a motion for a new trial, which was denied, and from the order denying the same an appeal is taken to this Court. The evidence adduced on the trial, and the questions raised by counsel, sufficiently appear in the opinion of the Court.

Allis, Gilfillan & Williams, for Appellant.

I.  The damages are excessive.

II.  Those in charge of the boat, including plaintiff and those in charge of the engine and train, were engaged in the same general employment, to wit, that of transporting passengers and freight between St. Paul and Mankato. Plaintiff therefore cannot recover. *Farwell vs. B. and W. R. R. Co.*, 4 *Metcalf*, 49 ; *Brown vs. Maxwell*, 6 *Hill*, 592 ; *Coon vs. U. and R. R. Co.*, 5 *N. Y.*, 492 ; *Sherman vs. R. and S. R. R. Co.*, 17 *N. Y.*, 153 ; *Wright vs. N. Y. C. R. R. Co*, 25 *N. Y.*, 562.

III.—The evidence does not show any negligence on the part of defendant or its servants. The train was in charge of

the proper complement of competent men, and was managed with due prudence and care.

IV.—The accident was caused by plaintiff's own gross negligence in placing himself on the track, knowing the danger, and in such a way that he could not see the engine and train, and those in charge of the engine and train could not see him, and without notifying those in charge of the train that he intended to *go upon the track.* For that reason he can not recover. See *Hartfield vs. Roper,* 21 *Wend.,* 615 ; *Rathbun vs. Payne,* 19 *Wend.,* 399 ; *Smith vs. Smith,* 2 *Pick.,* 621 ; *Thompson vs. Bridgewater,* 7 *Pick.,* 188; *Adams vs. Carlisle,* 21 *Pick.,* 146 ; *Wild vs. The H. R. R. R. Co.,* 24 *N. Y.,* 430 ; *Ib.,* 29 *N. Y.,* 315 ; *Stever vs. The O. and S. R. R. Co.,* 18 *N. Y.,* 432 ; *Spencer vs. The N. and S. R. R. Co.,* 5 *Barb.,* 337 ; *Brooks vs. N. Fall R. R. Co.,* 25 *Barb.,* 600 ; *Briesiegal vs. N. Y. C. R. R. Co.,* 33 *Barb.,* 429 ; *Ernst vs. H. R. R. Co.,* 24 *How. Prac. R.,* 97.

V.—The verdict was against the evidence.

I. V. D. HEARD for Respondent.

*By the Court*—McMILLAN, J.—This is an appeal from an order denying a new trial.

It is urged by the defendant as a ground for a new trial, that " those in charge of the boat, and those in charge of the engine, were engaged in the same general employment, to wit, that of transporting passengers and freight between St. Paul and Mankato, and the plaintiff, therefore, cannot recover."

The railroad company is a corporation separate and distinct from the steamboat company. It was admitted that the defendant had an arrangement with the steamboat, by which the defendant was to carry passengers and freight to Belle Plaine, and the steamboat was to carry them from Belle

Plaine to Mankato and intermediate points; that the prices
were distinct, but each sold tickets over the route of the
other, each receiving a certain portion of the moneys received
for fares and freight upon through passengers and freights;
that the railroad and steamboat ran in connection for that
purpose, and connected as to time, but there was no actual
connection; that the cars were to reach Belle Plaine at a cer-
tain time, and the steamboat to meet them there at such time;
that the railroad company carried the mails to Belle Plaine,
but had no connection with it further, except that the boat,
as agent for the upper contractors, received the up mail from
the cars, and the cars in turn received the down mail from
the boat."

The plaintiff introduced and read to the jury a ticket ad-
mitted by the defendant to be such as was sold by it and the
boat, pursuant to the above agreement, consisting of a gen-
eral ticket from " St. Paul to Mankato, Minn. V. R. R. & N.
W. U. Pkt. Co.," with coupons attached, indicating the parts
of the route traversed by the respective carriers, as above
agreed. Upon this state of facts we are of opinion there is
no such unity in fact, or legal identity between the railroad
corporation and the packet company, as will render their re-
spective employees servants of a common master; and the
rule urged by the defendant's counsel that a principal is not
liable to one of his agents or servants for injuries sustained
through the negligence of another agent or servant, when
both are engaged in the same general business, is not appli-
cable. It appears that the boat had moored at the track with
the knowledge and without objection from the railroad com-
pany, and that owing to high water the passengers could only
pass to and from the town and boat by passing along the rail-
road track; and that about this time there were persons upon
and in the immediate vicinity of the track; the brakeman on

cars had opportunity to see persons on the track; the grade was very steep; the coupling of one car had already been broken by a collision with a loose car; no bell was rung at any time on the side track when the cars were about to move or were in motion, besides other testimony on the part of the plaintiff which would go to show negligence, and was for the consideration of the jury. Under these circumstances we think there is evidence of a want of care on the part of the defendant, which would sustain the verdict of the jury as to the negligence of the defendant. But the defendant urges that the accident was caused by the plaintiff's own negligence.

It is a well settled rule, that although the defendant may be guilty of negligence, unless there was some intentional wrong on his part, the plaintiff cannot recover for an injury to which he himself contributed. *McMahon vs Davidson*, 12 *Minn.* 372. This is the important question, it seems to us, in this case, and from a careful consideration of the testimony, we think, as the evidence now stands, it shows such negligence of the plaintiff as will prevent his recovering in this action. The plaintiff himself says that " when the passengers started to come aboard, the locomotive and tender and two freight cars ran up the main track, and then down on the side track, without ringing any bell; the passengers were on the side track; they saw the engine, and had just time to get the passengers off the side track; the engine and cars continued running down the side track, and struck our staging, and slid it along the track, until it came against the car which was standing on the side track below the staging; they then started ahead, and ran up some distance, and came down again, and the staging cracked that time they struck it; they then ran up the track and stopped. I hallooed to the people on the shore, the railroad officials and others, and our captain

and mate, and asked what they were trying to do by backing down and running ahead; some one said they were trying to hook on the car which was standing on the track below the staging. I then shouted as loud as I could that they could not couple it on, because our staging held the cars further apart than their bumpers would reach; but if the bumpers would reach they would break our staging in two or crush it; the captain of the boat was standing by the tender. I called as loud as possible that I would get the staging in and allow them to get their cars. I called my men up to help me, and tried to draw in the staging, but could not; the side of the staging was wedged in under a tie, so that we could not haul it on the boat. I then went to turn the staging on its edge, and to assist in getting it in; and just as I got hold of it, and was in the act of raising it to turn it, the engine backed again. The car directly behind me was loose, and when they backed they caught me while I was lifting the staging. I was caught in my back, and along down my groin and right hip. I struggled to get out, and hallooed to stop the engine. A number of persons hallooed. They still backed the engine, while I was lodged in there, so that it shoved the car in front of me a few feet back. I was between the staging and the hinder car of the train they backed down. *   *   *   * "

On his cross-examination the plaintiff testified: "The train had been below the road eight or ten minutes;   *   *   during the eight or ten minutes they ran down to the staging three times; the grade from the public road down to where the boat was is considered steep for a railroad; it descended down to where the boat was; there was almost no grade where the boat was; I saw the cars back down the first time; I couldn't say if they struck the staging that time; after running down that time they started forward, and went up forty or fifty feet, and then came down the second time; my impression is they

struck the staging the second time they came down; I was watching the train; then they ran up the track again about the same distance as before; I think when they ran up that time the hindermost car uncoupled, and stood on the track, while the engine went on; I should think the car stood about eight or ten feet from the staging; about that time I concluded I had better take the staging off the track so that it would not be broken, and to allow them to couple on the car below the staging, and take it away; I supposed if I did not remove it the train would come down again and break it up; I stood on the track, between the staging and the engine, with my back turned to the train; I was on the side track; think there was a box car between me and the train, that would prevent me seeing the train, and would also prevent the engineer from seeing me; I had been there from one to two minutes; that is the time I was hurt, as they came down; *  * the car which struck me was driven down by the engine. *When struck I did not know the cars were coming.* When *I went out I thought they would come down again*, to take the cars below the staging. In *running back and forth they ran very slowly*, though the first time they came down they ran quite fast."

Captain Holmes testifies that the plaintiff was carpenter on the boat. " It was his duty as carpenter *to look after the staging.*"

It appears from the testimony that the plaintiff was acquainted with the steep grade; that the cars had backed down on the side track to the boat three times within the ten minutes preceding the accident; that at one of these times the staging was broken by the cars; that a car stood on the track immediately below the staging; that he expected the train to back down again to take this car, and that either the staging would prevent its coupling, or if it did couple, that it would

Miles Carroll v. The Minnesota Valley Rail Road Company.

crush the staging; that there was a difficulty in removing the staging from the track, the men called to aid the plaintiff having been unable to extricate it, and believing that the engineer could not see him, nor he see the engineer, he placed himself directly on the track, with his back to the train, and for one or two minutes engaged in extricating the staging, whether successfully or not does not appear.

The fact of standing on the rail road track with his back to a train of cars, under such circumstances, in the absence of anything showing necessity or excuse for it, is certainly negligence; there is no reason to believe that this staging might not have been extricated without the plaintiff or any one going on to the track at all, by other means, and certainly no reason appears why he should place his back to the train. The fact that it was his duty to look to the staging, does not excuse the negligent manner by which he risked his life in its discharge. Who can say that if the plaintiff had exercised ordinary care by placing himself in a position where he could see, and better hear, the train, this accident might not have been avoided?

With this conduct of the plaintiff, unexplained, we think the verdict should not be sustained; but other evidence may be adduced which will show the necessity of, or remove the appearance of negligence, from the conduct of the plaintiff.

The order appealed from is reversed, and a new trial granted.