The opinion of the court was delivered by
Watkins, J.
On or about the 1st of October, 1887, John A. Snyder received serious personal injuries by means of a fall from a descending freight elevator .of-the defendant, at .the western terminus of its railroad track on Black river, in the parish of Concordia; and from the wounds and bruises inflicted he suffered great pain and agony. One of his legs was subsequently amputated, and he thereafter died; ■and his widow, in her own right'and as tutrix of the minor children of deceased, brought this suit for the recovery of $20,000 as damages • — $10,000 for the pain and suffering of the deceased, and $10,000 for the loss of his love, society and support.
■ The jury awarded the sum of $5000, without interest, to the plaintiff, and in this court she has filed an answer and prayed for an amendment of the judgment, so as to increase the allowance to §10,000, with legal interest from judicial demand — the defendant having appealed.
After pleading a general denial, the averment of defendant’s answer is that it owns and operates a line of railroad, “and at its depot on Black river has erected a steam incline, or elevator, which it uses during a Short portion of each season in moving freight up and down the bank of said river, to and from steamboats, when the stage of water is very low; but defendant specially denies that said incline or elevator was constructed or intended for the purpose of 'carrying persons or passengers, or that persons or passengers were carried or permitted to ride on said elevator with the consent of the defendant company, or of its employés or agents. That said elevator ■was only supplied with a small flat car, without seats, railings or ■other protection for passengers, and was understood'to bé a very *305 dangerous place for persons to attempt to ride; and all persons were warned and strictly prohibited and forbidden to attempt to get on or ride on said car.”
It further specifically avers that the plaintiff’s husband was not killed or injured through any fault, negligence or carelessnes of the company, its employés or its agents.
That the deceased was frequently at the said depot, and was -well aware that all persons were strictly forbidden from attempting to ride on said car, was personally present, on an occasion recently, previous to the accident which caused his fatal injuries, and heard other persons ordered off the elevator by the company’s employés, and on that. occasion due notice was timely given, and before the elevator car started up the incline, warning all persons to get off, and other persons did get off, in compliance with the warning, but the deceased did not, and remained on the ear. That at the time, the deceased was a trespasser on the property of defendant, and guilty of most reckless carelessness, and contributed thereby to his own injury; and that, had he used ordinary care and not exposed himself to unnecessary risk and danger by persisting in riding on the said elevator, in violation of orders of the defendant’s employés, the unfortunate accident would not have happened.
The final averment is, that there are suitable and convenient approaches to its depots and cars for the accommodation of persons and passengers; its engineer, who was in charge of the elevator, was competent, careful and faithful in the discharge of his duties, and the company used all possible care and prudence in the operation of their railroad and elevator for the safety of the Dublic and its -employés. Within the scope of these pleadings a brief resume of the facts will suffice.
At the western terminus of defendant’s road on Black river, there is a depot on the crest of the bank, from which there is an incline track extending to the water’s edge, a distance of about 210 feet. On this incline track, a platform car was. operated in receiving and discharging freight, by being lowered from the top of the bank and drawn up again by means of a wire rope, one end of which is attached to the car, and the other is passed around a revolving drum, by means of a small engine. The platform of this car is eighteen feet in length and eight feet in width. Underneath it is a *306 frame, to which the trucks are attached, and whereby the platform is elevated to a height of three and one-half feet above the incline track, at the end next to the river bank, and to nine and one-half feet at the rear, or other end, so that its horizontal position is, at all times, preserved during the transit of the car up or down the bank. This platform is provided with no seats, caboose, or other accommodations for persons or passengers; and it had no railings, or protectors of any kind, adapted to the protection of passengers.
The engine by which the elevator was. moved up and down the incline was placed in position on the top of the river bank, adjacent to, but not connected with, the depot in any way; and the station of the engineer who operated it was also on the top of the bank. This, elevator was owned and operated by the defendant as an accessory of its railroad in receiving and discharging freight, which had been transported on or was intended for transportation by its trains. It was not designed for passenger accommodation or travel. For several years this railroad only extended eight miles west of the town of Yidalia, on the west bank of the Mississippi river; but in 1886 it was extended seventeen miles further, to Black river. After this, extension was made quite a considerable industry'sprung up in that locality, in the way of the shipment and- sale of fish, proving alike profitable to the fishermen and the railroad company.
The fish are taken from boats and thrown upon the platform of the elevator car, and the fishermen mount upon it and put them in salted boxes, and nail down the tops preparatory to their transportation. The car is then drawn up to the top of the river bank, and the boxes of fish are then transferred to the defendant’s, east-bound train for-shipment.
The deceased was engaged in this industry at the time the accident in question happened, and, on the morning it occurred, he, and his associates and assistants, had just completed the boxing of a cargo of fish, and were on the platform, when the engineer of the elevator moved it slowly up the incline, in the usual manner, to a point within about twenty-five feet of the top of the bank,, when, altogether,' without admonition to any one, the wire rope parted in twain, and the car ran rapidly down the track, coming- in sharp collision with the bow of a steamboat lying ashore, causing the deceased to be hurled, with great violence,, against a hog-chain,, *307 whereby his thigh was broken, and death resulted. Thus far there-seems to be no practical difference of opinion among the various, witnesses who were interrogated; but there is serious discrepancy, first, as to whether the employés. gave timely warning of the starting of the train; second, as to- the existence óf an established custom on the part of shippers and other persons, to ride up and down the incline without protest on the part of defendant’s employés and agents; and, third, as to the existence- of defendant’s orders and notices forbidding such use thereof..
In considering this case, it must be borne in mind that the elevator and incline formed no part of the railroad proper, but were entirely distinct and separate therefrom. They were operated independently of each other, though both were owned by defendant. The elevator-was designed exclusively for carrying freight, and not for the transportation of passengers or persons, and the absence of notice or warning against its use for passenger traffic, if such was the case, did not have the effect of establishing between such persons as might use it and the company, contractual or quasi contractual relations,, as between carrier and passengers.
In using the car, as did the deceased, a presumption is raised against him of being an intruder or trespasser on the defendant’s property without consent, and the burden is on the plaintiff to rebut it. The fact that the deceased had dealings with defendant does not. prove that there existed between them the relations of master and servant. At most, their relations were those of shipper and carrier of freight. But, from the evidence, it is clearly established that the entry of the deceased upon the elevator platform was both voluntary and gratuitous, and done at his own risk and peril", even if it-was not forbidden by the company and its employés expressly.
But we think it is fully established by a fair preponderance of the testimony that the superintendent and other employés had expressly and repeatedly prohibited and forbidden persons and shippers from riding on the elevator. That the deceased was only six months prior-to the accident employed as engineer of the company in operating-the elevator, and as such, had personal knowledge of defendant’s, orders and instructions in this respect; and his knowledge did not. cease with his employment. Whatever may have been the custom and, usage in this regard, it can not b.e invoked by the heirs and legal *308 representatives of the deceased, as he acted under his own personal knowledge of the company’s disapproval of it and its orders to the •contrary.
We think it also fully proven that on this particular occasion the engineer did give timely warning of his intention to start the train. Though the deceased may not have heard the warning, he had a good opportunity to have done so, and other persons similarly situated did hear it and heed it, too. A strong circumstance favoring the theory that warning was given, is that, after the car had ascended the incline a short distance, it was halted for a moment in its ascent and two persons who were on the platform stepped off and only the deceased and his brother remained until the rope subsequently broke and the casualty occurred. This fact is admitted by all the witnesses, and there is no explanation of their conduct acceptable to reason, other than that they had received warning and heeded it, and that the deceased and his brother did not.
At the time the elevator car was started, the deceased had completed the packing of his ñsh, and all that remained for him to do was to go up on the river bank to the depot and obtain a bill of .lading. But, if.it had not been completed at the time of starting, it certainly had been at the time the halt was made, and his associates' • and assistants got off.
The plaintiff’s theory is this, quoting from her brief, at page ■ 31, viz;
“ It is clear that John A. Snyder, in mounting the car, and there filling with his fish, the empty boxes, and nailing them up, was not ■■a trespasser, nor a licensee, but was lawfully engaged in a business, mutually profitable to Mm and the railroad company; was shipping his freight in the manner expressly authorized by the company, and was entitled to all the care due a passenger.”
During the course of the trial, her counsel requested the judge to .so charge the jury, but the latter declined, and the former excepted. In support of their contention, counsel quote from the notes found at page 462 of 1 Thompson on Negligence, and which read as follows, viz:
“The general rule is, that to persons who are lawfully upon the •tn-ach, engaged in labor, the railroad company owes a duty of active vigilance, and such persons have a right to become ingrossed in their *309 labor to such an extent that they may be oblivious to the approach, of trains, relying upon the railroad company with reference to them. A person] having business with the railroad company — e. g., in loading or unloading freight — has a right to occupy a position designated by the company’s agents, hazardous though it may seem, relying upon the company’s diligence to protect him in such position. Such a person has a right to still presume that the railroad company will act in accordance with its duties, though it has once failed to do so.”
But the deceased was not engaged in any kind of labor on the defendant’s track, and was not its employé, and although he did have business relations with the railroad company, relating to the shipment of freight, his sole duty was to box his fish and place them oa the platform. The contract of safe carriage and delivery of thpfreight on the part of the company was complete, and its risk fully-undertaken at that moment of time. No position was designated by the defendant for the occupancy of the deceased while he was engaged in the preparation of his fish for shipment, and that situation, only became hazardous when the ear was started up the incline.. He was notified that he was unauthorized to occupy that position any longer, and he could not any longer rely upon the railroad company to protect him. After due warning had been given, and the car had moved from its stationary position, and commenced its ascent, of the incline, all quasi contractual relations between the deceased personally and the defendant ceased eo instanti, and his continued occupancy of the platform converted him into a trespasser, taking the risk of his own safety and not relying on the company’s protection,.
Hutchinson on Carriers, in treating of “who (is) entitled to be considered a passenger,” says:
“Every person being carried upon a public conveyance, usually employed in the carriage of passengers, is presumed to be lawfully on it as a passenger. But if a person, by his own solicitation or. by his own consent, is carried upon a vehicle or conveyance which is. not used for the purpose of passenger carriage, and this be known to him, there can be no such presumption, although the owner be a common carrier of passengers by other and different means of conveyance.” Pages 447, 448. Reary vs. Railroad Company, 40 An. 82.
In such a ease the contributory negligence of the injured party being shown, the railroad company is only liable, if, by the exercise, *310 of ordinary c.are, it could have prevented the accident. But this liability has been interpreted as arising, if, by the exercise of reasonable care on the part of the company, after its discovery of the danger in which the injured party stood, the accident could have been prevented and was not; or if the company failed to discover the danger by reason of the recklessness, carelessness, or inattention of its ■employés, when the exercise of ordinary ■ care on their part would have led to the discovery of the danger, and averted the calamity. Such is the purport of a decision of the Supreme Court of Missouri—Harlan vs. St. Louis, etc., Railroad Company, 65 Mo. 22—which Thompson considers to be the most complete statement of this doctrine he has met in his examination of it.
To the same purport are other authorities: Railroad Company vs. Norton, 24 Penn. St. 465; Hill vs. Glanding, 42 Penn. St. 493: Jeffersonville Railroad Company vs. Goldsmith, 47 Ind. 43; Lafayette, etc., Bailroad Company vs. Huffman, 28 Ind. 287; Pittsburgh, etc., Railroad Company vs. Collins, 7 Rep. 153; Cincinnati, etc., Railroad Company vs. Eaton, 53 An. 310; Evansville, etc., Railroad Company vs. Wolf, 59 Ind. 89.
Mr. Thompson, in treating this question, says: “ Under the rule, conceding the right of a free track to a railway company, in the event of an injury to a trespasser upon its line, it can be held liable only for an act which is wanton or gross negligence in the management of its line, which is equivalent to intentional mischief.” Thompson on Negligence, p. 449, citing: Carroll vs. Minnesota, etc., Railroad Company, 13 Minn. 30; Green vs. Erie Railroad Company, 11 Hun. 333; Herring vs. Wilmington Railroad Company, 10 Ind. 402; Kenyon vs. New York, etc., Railroad Company, 5 Hun. 479; Donaldson vs. Milwaukee, etc., Railroad Company, 21 Minn. 293.
Various other authorities and text writers may be collected to the same effect.
In Beach on Contributory Negligence, we find the principle announced thus, viz:
11 But on the other hand, it may be urged that a passenger, voluntarily in a baggage car, When he might just as conveniently be in the car provided for his transportation, is a quasi trespasser. He plainly has no business in that car, and toward trespassers a carrier is not hound to exercise ihat high degree of care and circumspection ■due to his regular passengers.” Page 160.
*311 In Pierce on Railroads we find the rule formulated thus, viz :
‘! The company has no right to inflict wanton injury on persons who are unlawfully on its location, and when human life and limb are concerned, the injury may well be treated as wanton, subjecting the company to damages, when, although able to do so, they neglect to arrest the engine, which they have good reason to believe will, without an effort to stop it, result in injury to the wrong-doer.” Page 330.
In Hutchinson on Carriers the rule is thus carefully stated, viz:
“The carrier is not under the same degree of obligation as to care and diligence to guard against injuries to strangers, as he is in case of those against passengers. His duty to the former is governed by the general principle of law, that every one is obliged, upon considerations of humanity and justice, to conform his conduct to the rights of others, and in the prosecution of his lawful business to use every reasonable precaution to avoid their injury. But to his passengers is due thatn-tmosi care and diligence which can be bestowed by human skill and foresight, and consequently that which would be culpable negligence in the case of the passenger, would not be necessarily so in the case of one to whom the carrier was under no such peculiar obligation. Page 447; Late vs. Railroad Company, 37 An. 337; Reary vs. Railroad Company, 40 An. 32; Railroad Company vs. Stone, 17 Wall. 657.
In Patterson’s Railway Accident Law the rule is stated to be “that carriers of passengers are not answerable as insurers for the safety of their vehicles and appliances, but that they are liable only for such accidents as may happen from any defect therein which might have been prevented by the exercise of due care on their part; and that the duty to take due care, however widely considered, or rigorously inforced, will not subject the (company) to the plain injustice of being compelled by the law to make reparation for a disaster arising from a latent defect in the machinery which they are obliged to use., which no human skill or care could either have prevented or detected;'” (p. 234) quoting from Readhead vs. Midland-Railway, L. R. 2 Queen’s Bench, 412; 4 Ibid. 379.
This being the rule in reference to passengers, it is more liberal with regard to strangers and trespassers.
We think the foregoing authorities are conclusive on this question; -and, under the evidence recited, the act <of the defendant was in no *312 sense wanton. The accident was the result of the sudden breaking of the wire rope, of the latent defect of which the employés were apparently ignorant. Nothing in the situation ■ or surrounding circumstances indicate a necessity for greater care and caution than was exercised. The verdict and judgment appealed from are erroneous. It is therefore ordered and decreed that the judgment appealed from be reversed; and it is now ordered that the plaintiff’s demand be rejected at her cost in both courts.